UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MPC, by his guardian, CMC,

      Plaintiff,         Case No. 24-cv-0630-bhl

 v.

RACINE COUNTY, et al,

      Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

   Michael Mixon (now deceased) was criminally convicted of sexually assaulting Plaintiff MPC, an autistic, non-verbal adult male, while both lived at an adult group home in West Allis, Wisconsin. Through this lawsuit, MPC, through his legal guardian, CMC, seeks damages from multiple defendants allegedly involved in MPC's placement and supervision at the group home. Most of Plaintiff's claims arise under state tort law, but he also seeks damages from three defendants, Racine County, Jalee Banach, and Hope Otto (collectively, the County Defendants), under 42 U.S.C. §1983 for alleged constitutional violations. (ECF No. 1 ¶¶54–113.) Plaintiff alleges the County Defendants violated MPC's rights under the Due Process Clause of the Fourteenth Amendment by failing to investigate and discover that Mixon had a history of sexual assaults before they petitioned a state court to place MPC in the same group home. (*Id*. ¶¶54–63.) Plaintiff also claims Racine County is liable for these violations under *Monell v. Department of Social Services*, 346 U.S. 658 (1978). (*Id.* ¶¶97–107.)) The County Defendants moved for judgment on the pleadings on the federal claims. (ECF No. 70.) Because the Court agrees that the facts alleged, while unquestionably tragic, do not implicate state action that "shocks the conscience," the County Defendants' motion will be granted and the federal claims dismissed. The Court will also relinquish jurisdiction over Plaintiff's remaining state law claims, which can be refiled in state court.

# BACKGROUND

Plaintiff MPC is an autistic and non-verbal adult male. (ECF No. 1 ¶8.) CMC is MPC's parent and guardian. (*Id.* at 1.) Defendant Racine County is a municipal corporation organized under Wisconsin law that maintains an Office of Adult Protective Services within its Human Services Department. (*Id.* ¶10.) Defendant Hope Otto is the director of Racine County's Office of Adult Protective Services, and Defendant Jalee Banach is a case manager in that office responsible for MPC's case. (*Id.* ¶¶11–12.) Defendant My Choice Wisconsin, Inc. is a private Wisconsin corporation that acts as a managed care and health maintenance organization, providing services to adults with disabilities. (*Id.* ¶13.) Defendant Helping Hands on 75th Street, LLC owned the "Helping Hands on 75th" adult group home in West Allis, Wisconsin. (*Id.* ¶¶8–9, 15.) Defendants Doran Kemp (now represented by his estate) and Alex Mayfield were the owners of Helping Hands LLC. (*Id.* ¶15.) Defendant Danny Web was a Helping Hands' employee. (*Id.* ¶19.) Plaintiff also pursues claims against several unidentified John Doe defendants and five fictitious insurance companies. (*Id.* ¶¶22–31.) Plaintiff previously named but has since dismissed his claims against Defendants Roger Hughley, Michele Kennon, Lakeisha Johnson, Lori Knapp Richland, Inc, and Mixon (now deceased). (*See id.* ¶¶14, 18, 20–21; *see also* ECF Nos. 38, 47, 78.)

Prior to the events giving rise to this lawsuit, MPC lived at an adult group home located in Whitewater, Wisconsin. (ECF No. 1 ¶33.) After an outburst of aggressive behavior related to his autism, MPC was detained under Wisconsin law and placed at the Winnebago Mental Health Institute. (*Id.*) On March 19, 2021, MPC's detention was changed to a temporary guardianship and protective placement, and the venue of MPC's case was moved from Rock County to Racine County. (*Id.* ¶34.) Just over a month later, on April 15, 2021, MPC was placed at the Helping Hands group home through an emergency transfer petition filed with the Racine County Circuit Court by MPC's case manager, Banach. (*Id.* ¶¶8–9, 15, 35–36; ECF No. 77-1.)[1]

When MPC arrived at the Helping Hands group home, Mixon was already a resident in the home's care. (ECF No. 1 ¶¶32, 39.) On June 7, 2021, the Milwaukee Police Department responded to a report of potential misconduct at the group home, and, following an investigation,

---

[1] The complaint confusingly alleges that the emergency transfer was initiated either by Banach and the County Defendants or by Defendants Torres and My Choice Wisconsin, Inc. (ECF No. 1 ¶37.) Plaintiff has since confirmed that Banach initiated the emergency transfer. (ECF No. 77 ¶2.)

determined that Mixon had sexually assaulted or attempted to assault MPC. (*Id.* ¶40–41.) The assaults took place while several Helping Hands employees were present at the facility and had the ability to prevent the assaults. (*Id*. ¶42.) Helping Hands also employed individuals with criminal records who were nonetheless entrusted with caring for and supervising MPC and Mixon. (*Id*. ¶44.)

When questioned by police, Mixon admitted that he had numerous sexual encounters with MPC prior to June 7, 2021. (*Id*. ¶45.) The Milwaukee County District Attorney charged Mixon with Attempted Second-Degree Sexual Assault of a Mentally Ill Victim. (*Id*. ¶46.) He pleaded guilty and was sentenced to three years' incarceration and three years' extended supervision. (*Id*. ¶47.) Mixon died while incarcerated on August 17, 2024. (ECF No. 30.)

In 2016, years before he assaulted MPC, Mixon was found guilty of sexually assaulting a mentally ill victim and placed on the Wisconsin Department of Corrections Sex Offender Registry. (ECF No. 1 ¶48–50.) The County Defendants failed to search the sex offender registry before MPC was placed at the same group home as Mixon. (*Id*. ¶52.) Having failed to discovery Mixon's criminal history, the County Defendants also failed to inform MPC's family that a registered sex offender lived at the same group home. (*Id*.) "But for" the County Defendants' "error" and their failure to discover the sex registry information, Mixon would not have sexually assaulted MPC. (*Id.* ¶53.)

**LEGAL STANDARD**

A party may move for judgment on the pleadings after the pleadings are closed. Fed. R. Civ. P. 12(c). Courts resolve motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) using the same standard that applies to a Rule 12(b)(6) motion. *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016). In ruling on a motion for judgment on the pleadings, a court may consider the complaint, answer, and any attachments to those documents. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

For the purposes of deciding a Rule 12(c) motion for judgment on the pleadings, the Court must "accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *See Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A

complaint must do more, however, than "recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A complaint survives a motion for judgment on the pleadings under 12(c) when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). The complaint will be dismissed if it fails to allege sufficient facts to state a claim on which relief may be granted. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

## ANALYSIS

The County Defendants seek judgment on the pleadings on Counts I and VIII of Plaintiff's nine-count complaint. In Count I, Plaintiff alleges that the County Defendants violated MPC's substantive rights under the Due Process Clause of the Fourteenth Amendment by "placing or allowing MPC to be placed" at Helping Hands. (ECF No. 1 ¶¶54–63.) In Count VIII, Plaintiff contends that Racine County and Otto are liable for those violations under *Monell v. Department of Social Services*, 346 U.S. 658 (1978). (*Id.* ¶¶97–107.) Plaintiff complains that the County Defendants violated MPC's constitutional right "to be free from unnecessary harm and to be made fully aware of the risks of being placed at" the Helping Hands group home. (*Id.* ¶55.) According to Plaintiff, the County Defendants' failure to "turn over vital information related to Mixon" before placing MPC at Helping Hands allowed Mixon to sexually assault MPC, and this failure "amount[s] to deliberate indifference of [MPC] and his clear need for basic . . . information." (*Id.* ¶58.) The County Defendants maintain that these allegations do not support a Fourteenth Amendment Due Process claim. As explained below, the Court agrees.

I. **Plaintiff Has Not Alleged a Constitutional Violation Sufficient to State a Claim Under Section 1983 or *Monell*.**

The Due Process Clause prohibits the state and its agents from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1, cl. 2. While

procedural by its very terms, courts have recognized that the Due Process Clause has a "very limited" substantive component as well. *See Lukaszczyk v. Cook County*, 47 F.4th 587, 599 (7th Cir. 2022) (quoting *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019)). Defining the scope of that substantive component has proved difficult. *See Campos*, 932 F.3d at 975.

To prevail on a substantive due process claim, a plaintiff must plead and ultimately prove that: (1) a government actor's conduct violated the plaintiff's fundamental rights or liberties; and (2) the conduct was both arbitrary and irrational. *Id.* (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). As to the first element, courts are "reluctant to expand" the fundamental rights recognized in existing caselaw. *See Robbin v. City of Berwyn*, 108 F.4th 586, 589 (7th Cir. 2024) (quoting *Campos*, 932 F.3d at 975); *see also Glucksberg*, 521 U.S. at 720 (enumerating the limited fundamental rights recognized by the Supreme Court). Because "guideposts for responsible decision making" in substantive due process are "scarce and open-ended" courts must exercise the "utmost care" and focus on how the plaintiff's allegations describe the "constitutional right at stake[.]" *Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 125 (1992) (citing *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225–26 (1985)). As to the second element, because "[s]ubstantive due process protects against only the most egregious and outrageous government action," *Campos*, 932 F.3d at 975 (citing *Lewis*, 523 U.S. at 845), the alleged conduct must be so "arbitrary and irrational" as to "shock the conscience." *Nelson v. City of Chicago*, 992 F.3d 599, 604 (7th Cir. 2021) (citations omitted). Thus, allegations that a state actor was negligent are insufficient. *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986) (partially overruling *Parrat v. Taylor*, 451 U.S. 527 (1981)). Because Plaintiff has failed to plausibly allege conduct by the County Defendants that satisfies either element, the motion for judgment on the pleadings will be granted.

> **A. Plaintiff Has Not Alleged that the County Defendants Violated a Fundamental Right.**

Plaintiff frames his substantive due process claim poorly. He alleges the County Defendants were "deliberately indifferent" to MPC's rights, (ECF No. 1 ¶¶54–63), but that is not the standard for this type of Fourteenth Amendment violation. Deliberate indifference is the standard for Eighth Amendment claims brought by incarcerated prisoners who contend that corrections officers or prison medical staff intentionally disregarded their basic needs and for similar claims under Fourteenth Amendment brought by pre-trial detainees. *See Board v.*

*Farnham*, 394 F.3d 469, 477–78 (7th Cir. 2005). While the Supreme Court and Seventh Circuit decisions offer a variety of formulations, a plaintiff pursuing a substantive due process claim based on harm caused by a government actor must allege and prove conduct that "shocks the conscience" and is "arbitrary in a constitutional sense." *Lewis,* 523 U.S. at 846–47; *Nelson*, 992 F.3d at 604; *Collins*, 503 U.S. at 128. Plaintiff's framing is also problematic because he accuses the County Defendants of violating MPC's right "to be free from unnecessary harm" and "to be fully informed about the risks of being placed" at Helping Hands. (ECF No. 1 ¶55.) But neither the Supreme Court nor the Seventh Circuit has recognized these as fundamental rights. The Supreme Court has, however, recognized that the Due Process Clause protects an individual's liberty interest in being free from unjustified intrusions on personal security, *see Deshaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989) (citing *Ingraham v. Wright*, 430 U.S. 651, 673 (1977)), and this is the liberty interest most directly implicated by Plaintiff's allegations.

Clumsy framing aside, Plaintiff's substantive due process claim fails because the person who intentionally or affirmatively harmed MPC was Mixon, a private actor, not any of the County Defendants. A claim under 42 U.S.C. §1983 requires that the violation occur at the hands of a person acting under color of state law. *DiDonato v. Panatera*, 24 F.4th 1156, 1159 (7th Cir. 2022). People act under color of state law when they possess power "by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id*. (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). Plaintiff does not allege facts plausibly suggesting that Mixon was a state actor.[2]

Plaintiff tries to get around the absence of state action by claiming that the County Defendants are responsible for Mixon's assaults based on their failure to discover and disclose Mixon's history of sexual violence before placing MPC at Helping Hands. (ECF No. 1 ¶¶51–53.) This attempt to sidestep Section 1983's state action requirement was largely rejected by the Supreme Court more than thirty years ago in *DeShaney*.

In that case, the Supreme Court addressed an attempt to use the Due Process Clause to hold governmental officials responsible for assaults by a private actor. *DeShaney* arose in this district

---

[2] Plaintiff asserts "neither MPC nor Mixon can be considered private actors" because both were "under restricted housing." (ECF No. 76 at 8.) But Mixon's placement in a group home does not transform him into a state actor. Nor does Plaintiff define or explain the significance of MPC and Mixon being in "restricted housing." Plaintiff's suggestion that MPC could be considered a state actor is nonsensical.

and concerned horrible, repeated beatings of a 4-year-old boy by his father, assaults that caused a life-threatening coma and severe brain damage. 489 U.S. at 191–93. The boy and his mother sued Winnebago County, its Department of Social Services, and various county employees, asserting the Winnebago county defendants violated the boy's substantive due process rights by failing to act to protect him from his father's abuse. *Id*. at 193. The Supreme Court agreed with this Court and the Seventh Circuit that the defendants were entitled to judgment as a matter of law, emphasizing that the purpose of the Due Process Clause is "to protect the people from the State, not to ensure that the State protect[] them from each other." *Id*. at 196. As the Court explained, nothing in the Due Process Clause "requires the State to protect the life, liberty, and property of its citizens against invasion by private actors," like the abusive father. *Id.* at 195. The Court also expressly cautioned against allowing sympathy for tragic circumstances to transform situations best governed by state tort law into federalized Constitutional claims. *Id*. at 202–03. In sum, a constitutional violation requires state action and the Due Process Clause does not confer a general affirmative right to governmental aid or "transform every tort committed by a state actor into a constitutional violation." *Id.* at 196, 202 (citations omitted).

Plaintiff's legal theory is inconsistent with *DeShaney's* basic teaching. If the state actors in that case had no Constitutional duty to protect a child they had returned to his father's custody, even with direct knowledge of the father's past abuse, the County Defendants cannot be held liable here for failing to protect MPC from Mixon, a private actor living at the group home. (ECF No. 1 ¶¶51–53.) Plaintiff's claims are not premised on the County Defendants' actions against MPC but on their alleged errors in failing to protect him from Mixon, a private actor. If the state actors in *DeShaney* could not be liable for a constitutional violation, the County Defendants cannot have violated the Due Process Clause here. Plaintiff's remedies lie in his claims under state tort law.

The *DeShaney* Court recognized two "limited" circumstances in which "the Constitution imposes upon the State affirmative duties of care and protection with respect to specific individuals," 489 U.S. at 198, and Plaintiff tries to fit his claims within both. *DeShaney* first recognized that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 199–200. Thus, the State must provide medical care to incarcerated prisoners and necessary services to involuntarily committed mental patients under the Eighth and

Fourteenth Amendments, respectively. The State's "special relationship" with these individuals creates an exception to the general rule. The Court also acknowledged that a substantive due process violation may arise when the State affirmatively creates a danger to an individual or renders an individual more vulnerable to a known danger. *Id.* at 200–01. This is referred to as the state-created danger exception. Neither exception applies to the facts alleged here.

With respect to the first exception, the County Defendants did not take MPC into their custody and exercise control of him against his will within the meaning of *DeShaney's* special relationship exception. The assaults occurred at the Helping Hands group home, a private facility in which both MPC and Mixon received care, not a government jail or mental health facility. (ECF No. 1 ¶¶40–41, 45.) At most, Plaintiff alleges that the County Defendants were involved in changing MPC's prior detention to a "temporary guardianship and protective placement" and in petitioning a state court to transfer MPC's care to Helping Hands, a private group home. (*Id.* 1 ¶¶34–36.) As the County Defendants note, no court has found that the special relationship applies when a state actor defendant merely petitions to place an individual at a privately operated facility. (ECF No. 71 at 11–12.) Alleging state custody within the special relationship exception requires plausible allegations of substantially more control by the state actors, control that deprives him of his ability to act for himself. Plaintiff's theory would significantly expand the special relationship exception and expose state actors to potential federal constitutional liabilities in ways not previously recognized. Given the Supreme Court's instructions in *DeShaney*, this Court must be hesitant to embrace such an expansion.

The Seventh Circuit has applied the special relationship exception in the foster care context to allow claims against state actors who affirmatively placed children in the care of foster parents *known* to be deficient or abusive. *See K.H. Through Murphy v. Morgan*, 914 F.3d 846 (7th Cir. 1990); *Camp v. Gregory*, 67 F.3d 1286, 1291–99 (7th Cir. 1995) (finding that the complaint stated a claim but affirming dismissal on qualified immunity grounds). But in those cases, the state agencies controlled the child's physical custody and placement, with no other legal guardian or custodian available to act to protect the child. That is not the case with respect to MPC.

Plaintiff highlights the roles of Banach and the other County Defendants in placing MPC at Helping Hands alongside Mixon. (ECF No. 76 at 10.) He asserts that Banach acted as MPC's "proper legal guardian" in petitioning the Racine County Circuit Court to place MPC at Helping

Hands. (*Id.*) Plaintiff also notes that MPC was previously detained at the Winnebago Mental Health Institute through a Chapter 51 commitment, which was later changed to a temporary guardianship and protective placement. (*Id.*; ECF No. 1 ¶¶33–34.) But Plaintiff does not allege that the County Defendants had legal custody or control over MPC sufficient to fall within the limited scope of the special relationship exception. To the contrary, Plaintiff identifies MPC's mother, CMC, as his "guardian" in the complaint. (ECF No. 1 at 1.) And, in briefing, Plaintiff confirms she had "shared guardianship over her son" and "joint custody in certain capacities," (ECF No. 76 at 12, 55, 12.) While the complaint alleges that the County Defendants had input in working with My Choice Wisconsin to find a private care provider, this input is insufficient to bring their relationship with MPC within the special relationship exception outlined in *DeShaney*. Unlike in *K.H. Through Murphy* and *Camp,* Plaintiff alleges no facts suggesting the County Defendants knew of Mixon's past convictions. Nor has Plaintiff alleged that the County Defendants placed MPC in the care of the private tortfeasor who harmed him; Mixon was MPC's peer, not a foster parent entrusted with his care. *See Deshaney,* 489 U.S. at 201; *see also K.H. Through Murphy*, 914 F.2d at 852.

The Seventh Circuit confirmed the limited application of the special relationship exception in connection with claims by the parents of children with disabilities who voluntarily attended residential schools operated by state actors. In *Stevens v. Umsted*, 131 F.3d 697 (7th Cir. 1997), the Court of Appeals applied *Deshaney* to the case of a disabled student who was sexually assaulted by other students while attending a state-run residential school, and whose sexual abuse continued after the superintended of the school had actual knowledge of the assaults. *Id.* at 700–04. It affirmed the District Court's dismissal of the complaint because the student was not in the state's legal custody and not held at the residential school against his will. *Id*. at 704. It pointed out that the student's parents had consented to his admission at the residential school and could have requested his discharge, making his situation different than incarcerated or involuntarily institutionalized persons. *Id.* The facts alleged here are also in line with *Stevens* and other cases that have refused to extend the special relationship exception. *See e.g. Hullett v. Dreessen*, 751 F.Supp.3d 914, 924–25 (N.D. Ind. 2024) (holding Indiana's legal custody over a child did not create liability under the special relationship exception when child was harmed while in his parents' physical custody); *Wooten v. Campbell*, 49 F.3d 696 (11th Cir. 1995) (holding that

Georgia's temporary custody of child for sole purpose of arranging visitation for noncustodial father, while child's mother had physical custody otherwise, did not create a constitutional duty to protect the child, despite knowledge of father's history of abuse); *Waubanascum v. Shawano County*, 416 F.3d 658 (7th Cir. 2025) (holding defendant county did not have a special relationship with child harmed in abusive foster home when its only affirmative act was to issue a "courtesy license" to the foster parent, who was supervised by another county).

Plaintiff fares no better invoking the state created danger exception, which *DeShaney* and following decisions have made clear also has a very limited application. To fall within this exception, a plaintiff must allege facts and ultimately show "that the state affirmatively placed him in a position of danger and that the state's failure to protect him from that danger was the proximate cause of his injury." *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 988 (7th Cir. 2021) (citing *Buchanon-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). To be a proximate cause of the plaintiff's injury, the state created danger must create a foreseeable type of risk to a foreseeable class of persons; "[a] generalized risk of indefinite duration and degree is insufficient." *Id.* at 989 (citing *Buchanon-Moore*, 570 F.3d at 828–29).[3]

Plaintiff's allegations do not support application of the state created danger exception. The complaint does not allege that the County Defendants had any reason to know they were placing MPC in a position of danger. To the contrary, Plaintiff seeks to hold the County Defendants responsible for Mixon's assaults on MPC based on their "errors" in failing to search the sex offender database and discover Mixon's criminal history. (ECF No. 1 ¶¶51–53.) Because the County Defendants did not knowingly place MPC in a position of danger and then fail to protect him, they could not have reasonably foreseen the risk to MPC posed by Mixon, another private individual placed in the same group home.

The allegations in the complaint also confirm that the County Defendants did not create a danger within the meaning of this exception. The Court of Appeals has instructed lower courts that the state created danger exception is a principle of liability, not a rule proscribing or requiring primary conduct. *Weiland v. Loomis*, 938 F.3d 917, 919 (7th Cir. 2019). To apply, the danger

---

[3] In addition, the "state's failure to protect the plaintiff must shock the conscience." *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d at 989 (citing *Buchanon-Moore*, 570 F.3d at 827–28). As discussed below, the County Defendants' alleged conduct is not so arbitrary or irrational as to shock the conscience in the constitutional sense.

must be created by the government, not the private actor. *See Nelson*, 992 F.3d at 605. And the government's conduct must be "egregious," bordering on "criminal recklessness." *Estate of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019) (citations omitted). Even gross negligence that gives rise to private violence is insufficient to invoke the state created danger exception. *See Walker v. Rowe*, 791 F.2d 507, 510 (7th Cir. 1986). The County Defendants' alleged conduct falls well short of these requirements. At most, they petitioned the Circuit Court to place MPC in a private group home in which one of the other residents had an *unknown* history of criminal sexual assaults. They did not create the danger that ultimately befell MPC.

Plaintiff argues that because the County Defendants "specifically requested an emergency placement order from the circuit court and hand-selected the group home to put MPC into," this case is meaningfully different from *Deshaney*. (ECF No. 76 at 15.) Plaintiff cites *Sandage v. Board of Commissioners of Vanderburgh County*, 548 F.3d 595, 600 (7th Cir. 2008), to support this argument but that case actually undermines his theory. In *Sandage*, the families of two murder victims sued various county officials, alleging that the county sheriff department's failure to act on the decedents' complaints that they were being harassed by a prisoner on work release—a prisoner who later murdered the decedents—deprived them of their lives, in violation of the Fourteenth Amendment. *Id.* at 596. The District Court dismissed the complaint for failure to state a claim. *Id.* The Seventh Circuit affirmed, holding there was no violation of the decedents' constitutional rights because the sheriff did not commit any affirmative act that turned a specific potential danger into an actual one. *Id.* at 599–600. Instead, it merely failed to act to prevent violence by a private actor. *Id.*

As in *Sandage*, Plaintiff's theory here is based on the County Defendants' alleged inaction. Plaintiff complains that the County Defendants failed to screen the other residents at the group home in such a way as to discover and eliminate the risk posed to MPC by Mixon. (ECF No. 76 at 2 ("Plaintiff's claims are rooted in Defendants' failure to verify the criminal status of individual [sic] subject to group home environments and that each should have known of Mixon's prior rape felonies.") (citing ECF No. 1 ¶¶53, 56–57).) A state actor's failure to act to prevent a private actor's violence is not a constitutional violation. *Deshaney*, 489 U.S. at 196; *Estate of Her*, 939 F.3d at 877; *Nelson*, 992 F.3d at 605; *Sandage*, 548 F.3d at 600. Moreover, the facts alleged here are less egregious than those found insufficient in *Sandage*, where the sheriff's department was

aware of the danger from an affirmative report. Plaintiff alleges instead that the County Defendants failed to discover an unknown danger. Just as the state created danger exception did not apply in *Sandage*, it does not apply here.

The Seventh Circuit has also warned lower courts to "step back" before applying this exception and ask "whether local jurisprudence matches the instructions from higher authority." *Weiland*, 938 F.3d at 921. A district court cannot apply this exception if it would conflict with Supreme Court or Seventh Circuit caselaw, including *DeShaney*. *Id.* If the exception was available in any situation in which conduct by a state actor merely increased the risk of harm from a private actor, it would sweep too widely and contradict *DeShaney*. *Id.* That is precisely the case here; while petitioning for a new placement for MPC may have literally increased the risk of harm, it did not do so in a way that creates legal liability under the Constitution.

### B. Plaintiff Has Not Alleged Conduct by the County Defendants that Shocks the Conscience.

Even if Plaintiff pleaded facts sufficient to allege a violation of a recognized fundamental right in a manner not barred by *DeShaney*, his federal claims would still fail. To survive a motion for judgment on the pleadings, a substantive due process claim requires that a plaintiff allege conduct by a state actor so "arbitrary and irrational" as to "shock the conscience." *See Nelson*, 992 F.3d at 604 (citations omitted). As a matter of law, Plaintiff does not allege the level of arbitrary or irrational behavior that shocks the conscience in the constitutional sense.

In staking out the limits of substantive due process, the Supreme Court has repeatedly emphasized that only deliberate and egregious conduct by government officials can constitute a constitutional violation. In *Daniels v. Williams*, the Supreme Court highlighted the purpose of the Fourteenth Amendment Due Process Clause and noted that it applied "to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." 474 U.S. 327, 331 (1986) (emphasis in original). The Court emphasized the Constitution does not "supplant traditional tort law" and held that a state official's negligence cannot support a substantive due process claim. *Id.* at 332–34.

Six years later, in *Collins,* 503 U.S. at 126, the Supreme Court reiterated that the Due Process Clause is "a limitation on the State's power to act, not . . . a guarantee of certain minimal levels of safety and security" and rejected an attempt to extend a substantive due process remedy to a widow whose publicly employed husband died from his employer's negligence. The plaintiff

advanced two theories of liability: first, that the Federal Constitution requires that municipalities maintain minimal levels of safety and security in their workplaces, and second, that the city's deliberate indifference to the decedent's safety was arbitrary government action that shocked the conscience. *Id*. The Court rejected both theories. *Id.* at 128. First, the Court noted the plaintiff's substantive due process claim did not charge "the city with a willful violation" of the decedent's rights, but with negligence. *Id.* at 125–26. Because a violation of substantive due process requires government misconduct more egregious than negligence, the Court again declined to interpret the Due Process Clause to "impose federal duties that are analogous to those traditionally imposed by state tort law[.]" *Id.* at 128 (collecting cases). Second, the Court refused to characterize "the city's alleged omission in this case as arbitrary in a constitutional sense" based on "the presumption that the administration of government programs is based on a rational decisionmaking process[.]" *Id.* at 128 (*referencing Walker v. Rowe*, 791 F.2d 507, 510 (7th Cir. 1986)). The Court reasoned that the Due Process Clause does not protect from incorrect or ill-advised administration of government programs. *Id.* at 129 (citing *Bishop v. Wood*, 426 U.S. 341, 350 (1976)). A substantive due process claim that argues a state actor is liable not because of a deliberate choice but because of poor or negligent performance cannot succeed. *Id.*

The Supreme Court returned to this issue in *Lewis*. 523 U.S. 833. There, the Court refused to recognize a substantive due process claim based on the accidental death of a motorcycle passenger who died in a crash following a high-speed police chase. *Id*. at 855. The Court noted it had "emphasized time and again" that the Due Process clause protected against arbitrary action by the government, not private individuals, like the driver of the motorcycle. *Id*. at 845. Accordingly, "only the most egregious official conduct" could satisfy the arbitrariness component of a substantive due process claim. *Id*. at 846. The Court acknowledged that whether conduct rose to the level of shocking the conscience was context dependent and not subject to "mechanical application," but reaffirmed *Collins*' holding that negligence, like the conduct of the police officer while engaged in a high-speed chase, was insufficient. *Id*.

The Seventh Circuit has also emphasized this limitation on substantive due process claims. In *Waubanascum*, 416 F.3d 658, the Seventh Circuit vacated a jury verdict on a substantive due process claim against county officials who had been involved in the decision to place a teenage foster child with a foster parent who later sexually abused him. After addressing *DeShaney* and

its exceptions, the Court of Appeals held that, while the defendant county did not have custody over the plaintiff, and the special relationship exception therefore did not apply, even if an exception had applied, the conduct at issue was merely negligent. *Id.* at 666–67. The Court noted that liability will only arise when the state actor knows or suspects that foster parents are likely to abuse a child placed in their care. *Id.* (citing *K.H Through Murphy*, 914 F.2d at 852; *J.H. ex rel Higgin v. Johnson*, 346 F.3d 788, 795 (2003); *Camp*, 67 F.3d at 1293). Because the defendants did not know the foster parent was abusive, or at risk of being so, the defendants were merely negligent, and the conduct at issue could not satisfy the second element of a substantive due process claim. *Id.* at 667.

Under all this caselaw, Plaintiff's allegations are insufficient to support a due process claim. Plaintiff contends that the County Defendants did a poor job in choosing the group home listed in their emergency transfer petition to the Racine County Circuit Court; as noted in *Collins*, the Due Process Clause is not violated by ill-advised administration of government programs. 503 U.S. at 129. The County Defendants may have erred in failing to discover Mixon's criminal history, but this negligence is insufficient for a substantive due process claim. *See Lewis,* 523 U.S. at 846–47; *Collins*, 503 U.S. at 128; *Waubanascum*, 416 F.3d at 667. The conduct alleged could potentially create tort liability, but it does not "shock the conscience" within the meaning of the Constitution.

### C. Plaintiff's *Monell* Claim Fails Because He Has Not Alleged an Underlying Constitutional Violation

To state a municipal liability claim under Section 1983, a plaintiff must allege that he suffered a constitutional injury, and that the municipality authorized or maintained a custom of approving the unconstitutional conduct. *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) (citing *Thompson v. Boggs*, 33 F.3d 847, 859 (7th Cir. 1994)). Because Plaintiff has not alleged facts showing a constitutional injury, the inquiry ends there. Plaintiff's *Monell* claim must also be dismissed.

## II. Plaintiff's State Law Claims Will Be Dismissed for Lack of Subject Matter Jurisdiction.

Plaintiff's federal claims under Section 1983 provided the basis for supplemental jurisdiction over his related state law claims. (ECF No. 1 ¶5); 28 U.S.C. §1367. Because Plaintiff has failed to state a federal claim as a matter of law, his federal claims will be dismissed. The Seventh Circuit has instructed that district courts should generally dismiss all pendant state law claims when all federal claims are dismissed before trial. 28 U.S.C. §1367(c)(3); *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008). The Court will follow this approach and dismiss all Plaintiff's remaining state law claims, as there is no longer a basis to maintain subject matter jurisdiction.

## III. The Court Will Not Grant Plaintiff Leave to File an Amended Complaint.

Finally, the Court notes that Plaintiff includes statements in his briefing suggesting that he could resolve his pleading problems with an amended complaint. Plaintiff "reassert[s] his request for a Fed. R. Civ. P. 15(A) motion for leave of court to file an amended complaint." (ECF No. 76 at 3.) He also suggests (incorrectly) that he previously moved to amend his complaint on June 12, 2025. (*Id.* (citing ECF No. 72).) Plaintiff's assertions do not accurately reflect the docket.

Plaintiff has never moved for leave to amend his pleading. On June 12, 2025, Plaintiff invoked Civil Local Rule 7(h) to request a stay of the briefing on the County Defendants' motion for judgment on the pleadings. (ECF No. 72.) In this abbreviated motion, Plaintiff argued that he hoped to file an amended complaint that would cure various issues raised in the County Defendants' motion and asserted that he had "good cause to bring a Rule 15(a)(2) motion[.]" (*Id.* at 2.) Plaintiff indicated he "would file his motion requesting leave by June 20, 2025." (*Id.* at 2.) He then never actually moved to amend his complaint by June 20, 2025 or otherwise. Requests for court orders must be made by motion. Fed. R. Civ. P. 7(b)(1). The Court cannot respond to motions that are not made.

The Court need not rely on Plaintiff's procedural sloppiness; even if he had moved to amend, the request would be denied. The additional proposed facts that Plaintiff identifies in his merits briefing on the pending motion would not change the Court's analysis. Plaintiff asserts that he would "plead with more particularity that Racine County, through its employees. . . exercised control and supervision over MPC." (ECF No. 76 at 4.) Those assertions, according to Plaintiff,

will include that Banach filed an "emergency notice of Transfer of Protective Placement" for MPC in Racine County Circuit Court. (*Id.* at 5.) Plaintiff contends that because this was filed, and because County Defendants could in theory transfer MPC's placement, they had sufficient control to invoke the special relationship exception through their custody of MPC. (*Id.*) But even these additional facts are not enough to create a special relationship, as discussed above. Like the parents in *Stevens*, CMC appears to have had some authority to make decisions about her son's placement and care. The emergency transfer petition Plaintiff urges the Court to consider shows that CMC could object to the emergency transfer. (ECF No. 77-1.) And the proposed additions do not transform the County Defendants' negligence into conduct that shocks the conscience. Accordingly, the proposed changes would not alter the result.

## CONCLUSION

Mixon harmed MPC, but because he was a private actor, those actions do not render the County Defendants liable for violating the constitution. *Deshaney*, 489 U.S. at 196, 202. Similarly, because filing the petition to place MPC at Helping Hands was not so arbitrary or irrational as to shock the conscience, the County Defendants cannot be liable for violating the constitution. *Collins*, 503 U.S. at 126–28. While the federal Constitution and Section 1983 do not provide a basis to redress the harm MPC experienced, state tort law claims may, and Plaintiff can still pursue those theories in state court. As the Supreme Court emphasized in *DeShaney*, the Due Process Clause does not confer a general affirmative right to governmental aid, and it "does not transform every tort committed by a state actor into a constitutional violation." *Id.* at 196, 202 (citations omitted). This case proves prescient the Court's acknowledgement that horrific facts might lead judges and lawyers "to find a way for [plaintiffs] to receive adequate compensation for the grievous harm inflicted upon them" out of "natural sympathy." *Id.* at 202–03. But the Court stressed that courts should resist this impulse and remember that constitutional claims do not arise when the person who inflicted the harm is a private actor, not the state. *Id.* at 203. That teaching controls here.

For the reasons discussed above,

**IT IS HEREBY ORDERED** that the County Defendants' Motion for Judgment on the Pleadings, ECF No. 70, is **GRANTED** with respect to Plaintiff's Section 1983 claim and *Monell*

claim.  The Court relinquishes its jurisdiction over Plaintiff's remaining claims, and the case is **DISMISSED**.  The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on January 28, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge